UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NIKE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:22-cv-00082-RA-OTW |
| LULULEMON USA INC. and | ) | |
| CURIOUSER PRODUCTS INC. d/b/a | ) | |
| MIRROR | ) | |
| | ) | |
| Defendants. | ) | |

**<u>NIKE, INC.'S OPENING CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 3

        A.   Nike's Digital Sport Technologies ............................................................. 3

        B.   The Asserted Patents.................................................................................... 4

III.    ARGUMENT ....................................................................................................... 5

        A.   Legal Standards .......................................................................................... 5

             1.   Claims are the Cornerstone of the Claim Construction Analysis ................. 5

             2.   The General Rule:  Claims are Given their Ordinary and Customary
                  Meaning ................................................................................................. 6

        B.   The Person of Ordinary Skill in the Art.................................................... 10

        C.   Construction................................................................................................ 11

             1.   "a piece of workout equipment"............................................................ 11

             2.   the "one or more"  "attribute" claim phrases............................................ 18

IV.     CONCLUSION ................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)..................................................................................7

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007).................................................................................6, 12

*Altiris Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003)................................................................................7, 8

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001)................................................................................18

*Ancora Techs., Inc. v. Apple, Inc.*,
   744 F.3d 732 (Fed. Cir. 2014)..................................................................................7

*Apple Inc. v. MPH Techs. Oy*,
   28 F.4th 254 (Fed. Cir. 2022) .................................................................................6

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
   726 F.3d 1296 (Fed. Cir. 2013)................................................................................15

*Baxalta Inc. v. Genentech, Inc.*,
   972 F.3d 1341 (Fed. Cir. 2020)................................................................................8

*Cisco Sys., Inc. v. Int'l Trade Comm'n*,
   873 F.3d 1354 (Fed. Cir. 2017)................................................................................9

*Data Engine Techs. LLC v. Google LLC*,
   10 F.4th 1375 (Fed. Cir. 2021) ........................................................................2, 18, 24

*Edge Sys. LLC v. Cartessa Aesthetics, LLC*,
   571 F. Supp. 3d 13 (E.D.N.Y. 2021) ......................................................................12, 13

*Famosa, Corp. v. Gaiam, Inc.*,
   No. 11-05703, 2012 WL 865687 (S.D.N.Y. Mar. 14, 2012)........................................... *passim*

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002)................................................................................................5

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010).................................................................................1, 7

*Firtiva Corp. v. Funimation Global Group, LLC*,
  2022 WL 23165 (E.D. Tex. Jan. 3, 2022) ...................................................................21

*In re Fought*,
  941 F.3d 1175 (Fed. Cir. 2019) .................................................................................10

*Fujifilm Corp. v. Motorola Mobility LLC*,
  2015 WL 1265009 (N.D. Cal. Mar. 19, 2015) ......................................................20, 21

*Geomatrix Sys., LLC v. Eljen Corp.*,
  No. 3:20-cv-1900, 2022 WL 7130298 (D. Conn. Oct. 12, 2022) ...............................12

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008) ...................................................................3, 8, 18, 24

*Info-Hold, Inc. v. Applied Media Techs. Corp.*,
  783 F.3d 1262 (Fed. Cir. 2015) ...................................................................................7

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ...................................................................................5

*Johnson & Johnston Assoc. Inc. v. R.E. Service Co., Inc.*,
  285 F.3d 1046 (Fed. Cir. 2002) (en banc) ...................................................................5

*K–2 Corp. v. Salomon S.A.*,
  191 F.3d 1356 (Fed. Cir. 1999) ...................................................................................8

*Keurig, Inc. v. JBR, Inc.*,
  No. 11-cv-11941, 2013 WL 1213061 (D. Mass. Mar. 22, 2013) .................................7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) .....................................................................................6

*lululemon USA Inc. v. Nike, Inc.*
  IPR2023-00348, Paper No. 1 (PTAB Jan. 4, 2023) ....................................................23

*lululemon USA Inc. v. Nike, Inc.*
  IPR2023-00424, Paper No. 1 (PTAB Jan. 3, 2023) ....................................................17

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) .......................................................................................5

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
  839 F.3d 1111 (Fed. Cir. 2016) ................................................................................9, 10

*Merck & Co., Inc. v. Teva Pharms. USA*, Inc.,
  395 F.3d 1364 (Fed. Cir. 2005) ...................................................................................8

*Openwave Sys., Inc. v. Apple Inc.*,
  808 F.3d 509 (Fed. Cir. 2015) ................................................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................5, 6, 18, 24

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
  2019 WL 121970 (E.D. Tex. 2019) ......................................................................7, 10

*SanDisk Corp. v. Memorex Prods., Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005) ..............................................................................10

*Seoul Semiconductor Co. v. Satco Prods., Inc.*,
  570 F. Supp. 3d 59 (E.D.N.Y. 2021) .......................................................................12

*SIMO Holdings Inc. v. Hong Kong uCloudlink*,
  376 F.Supp.3d 369 (S.D.N.Y. 2019)........................................................................21

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
  511 F.3d 1132 (Fed. Cir. 2007)................................................................................8

*Soter Techs., LLC v. IP Video Corp.*,
  No. 20-cv-2989, 2021 WL 4553188 (E.D.N.Y. Oct. 5, 2021) ...............................12

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*,
  806 F.3d 1356 (Fed. Cir. 2015)................................................................................7

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
  358 F.3d 870 (Fed. Cir. 2004)..........................................................................20, 21

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
  802 F.3d 1283 (Fed. Cir. 2015)....................................................................7, 12, 13

*Thorner v. Sony Computer Ent. Am. L.L.C.*,
  669 F.3d 1362 (Fed. Cir. 2012)..............................................................................14

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)................................................................................5

*Unwired Planet, LLC v. Apple, Inc.*,
  829 F.3d 1353 (Fed. Cir. 2016).........................................................................9, 10

*Vectura Ltd. v. Glaxosmithkline LLC*,
  981 F.3d 1030 (Fed. Cir. 2020)................................................................................9

*VendoNet, Inc. v. Redbox Automated Retail, LLC*,
  13–cv–03475, 2014 WL 4555287 (N.D. Ill. Sept. 15, 2014) ...............................21

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..................................................................................8

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017)..............................................................................15

*White v. Dunbar*,
    119 U.S. 47 (1886)..................................................................................................8

**Statutes**

35 U.S.C. § 112..........................................................................................................5

I.    **INTRODUCTION**

The parties in this case dispute the meaning of three claim phrases.  This case is different from most claim construction disputes, where the parties disagree about whether the disputed claim terms carry their ordinary and customary meaning, as is the "general rule," or whether an exception applies and requires a more narrow interpretation.  Here, lululemon does not allege that any of the three exceptions to that "general rule" apply.  lululemon does not allege that the patentee (1)  acted as its own lexicographer by providing a special definition; (2) disclaimed some portion of the ordinary meaning in the specification; or (3) disclaimed some portion of the ordinary meaning during prosecution.  That leaves only one question for the Court:  what is the ordinary and customary meaning of the three disputed phrases?

The answer to that question is simple: the ordinary meaning of each disputed phrase, as understood by a skilled artisan in light of the specification at the time of the invention, is the same meaning widely accepted and understood by laypersons.  Any further construction of the disputed claim phrases is unnecessary and improper.  Each disputed phrase is clear on its face—made up of non-technical words with meanings that are commonly understood to the skilled artisan and layperson alike.  And a juror is readily able to apply each disputed phrase based on their lay understanding of the non-technical, commonly-understood words of each phrase.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010).  "While it is a court's job to elaborate on claim language that can sometimes be terse and/or difficult to parse, it need not—and should not—construe language that is clear on its face."  *Famosa, Corp. v. Gaiam, Inc.*, No. 11-05703, 2012 WL 865687, at *2 (S.D.N.Y. Mar. 14, 2012).  "[C]ourts should refrain from reading meaning into easily-understandable terms."  *Id.*

Yet lululemon asks the Court to depart from the patentee's chosen language and unnecessarily rewrite the claims.  For the first phrase—"a piece of workout equipment"—

lululemon asks the Court to improperly import limitations cherry-picked from particular embodiments in the specification.  In particular, lululemon asks the Court to narrow "workout equipment" to "training machines" that the user is physically "on" when performing workouts.  But that narrow interpretation contradicts the ordinary and customary meaning of the phrase, and it improperly excludes several embodiments disclosed in the specification.  For the second and third phrases—the "one or more" "attribute" phrases—lululemon asserts a grammatical argument that asks the Court to rewrite the claims by inserting the words "one or more" before each item in the listed attributes.  lululemon's proposed construction changes the basic requirements of the claim and improperly excludes embodiments disclosed in the specification.

lululemon's proposed constructions for each term are improperly driven by lululemon's litigation strategy—not the intrinsic record or the ordinary meaning of the terms.  In fact, just one week ago, lululemon took entirely different claim construction positions when it challenged these same claims in a different proceeding.  In two petitions for *inter partes* review, lululemon told the U.S. Patent and Trademark Office's Patent Trial and Appeal Board that "no constructions are necessary" for any of the claims at issue here.  lululemon also made invalidity arguments in those petitions that directly contradict its proposed claim constructions here.  The Federal Circuit has repeatedly rejected this type of "shifting sands" approach to claim construction, where a party twists claims, "like a nose of wax" in one way to argue invalidity, and another to avoid infringement.  *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) (internal quotations omitted).

For these reasons, Nike requests that the Court resolve the parties' claim construction disputes by rejecting lululemon's improper constructions, giving each disputed phrase its ordinary and customary meaning, and declining to rewrite or further construe the disputed phrases.  *See*

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *see alsoFamosa*, 2012 WL 865687, at *2.

## II.   FACTUAL BACKGROUND

### A.   Nike's Digital Sport Technologies

For decades, Nike has introduced various technologies that tracked, analyzed, and displayed activity-related information for an athlete and their community.  Among those technologies were the Nike+ iPod System, the Nike+ SportWatch, the Nike+ Fuelband, and the Nike+ ESP Basketball Footwear.  *See* Bowling Declaration, Ex. A (NIKE-LULU-0015196) at 15208.  Today, Nike's digital ecosystem includes hundreds of millions of athletes who actively engage in its digital ecosystem of products.  Neil Patel, *More than 300 Million Reasons Why Nike is Dominating Digital*, NASDAQ (May 7, 2022) https://www.nasdaq.com/articles/more-than-300-million-reasons-why-nike-is-dominating-digital; *see also* Reinaldo Fioravanti, *Nike: Just do it. Differently!*, HARVARD BUSINESS SCHOOL (Apr. 30, 2020), https://d3.harvard.edu/platform-digit/submission/nike-just-do-it-differently. Nike's mobile apps, such as the Nike+ Running App, Nike Run Club, and Nike Training Club, include features that create a community for athletes, including at least: tracking and storing activity-related progress, such as location, pace, distance, elevation, heart rate, miles splits; providing athletes with personalized coaching and training tips; allowing athletes to compete and compare results with others, including on social networks; supporting and enabling athletes having their own social networks, with tailored feeds based on personal interests; and providing athletes direct access to Nike's online digital store with highlights of products.  *See e.g.*, *Nike Run Club*, NIKE, www.nike.com/nrc-app (last visited January 9, 2023); *Nike Training Club*, NIKE, www.nike.com/ntc-app (last visited January 9, 2023).

B.     The Asserted Patents

Of the six patents Nike asserts in this case, only two are subject to the parties' claim construction disputes: U.S. Patent No. 10,188,930[1] ("the '930 patent") and U.S. Patent No. 10,923,225[2] ("the '225 patent").

The '930 patent, titled "Combinatory Score Having a Fitness Sub-Score and An Athleticism Sub-Score," issued on January 29, 2019, with an effective filing date of June 4, 2012. The '930 patent is directed to "a system, method, apparatus, and computer readable media configured for monitoring a user performing an athletic movement and/or exercise and generating a combinatory fitness athleticism score." '930 patent at Abstract.  The combinatory fitness athleticism score is comprised of a "fitness sub-score and an athleticism sub-score," which is determined by detecting, measuring, or calculating certain "attributes." *Id.* at 1:49–54; 23:33–47. "[E]xample fitness attributes may include, but are not limited to: endurance, flexibility, strength and combinations thereof." *Id.* at 23:36–38.  "[E]xample athleticism attributes may include, but are not limited to:  speed, agility, reaction, power, balance, and combinations thereof." *Id*. at 23:39–41.

The '225 patent, titled "Athletic Performance Sensing and/or Tracking Systems and Methods," issued on February 16, 2021, with an effective filing date of September 7, 2006.  The '225 patent is directed to "systems and devices used for athletic performance sensing, e.g., to measure, process, store, and/or output physical and/or physiological data associated with an athletic event, an exercise routine, or other physical or athletic performance." '225 patent at 4:13–17.  The claimed systems and devices are used in "any type of athletic event, exercise, training,

---

[1] The '930 patent is available at ECF No. 1-6.

[2] The '225 patent is available at ECF No. 1-8.

routine, or the like, including events performed as training exercises, events performed as part of actual competitions, etc." *Id.* at 4:19–22.

## III.   ARGUMENT

### A.   Legal Standards

Claim construction has one central purpose: to clarify "disputed meanings and technical scope," and "when necessary, to explain what the patentee covered by the claims." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Claim construction "is not an obligatory exercise in redundancy." *Id.*

### 1.   Claims are the Cornerstone of the Claim Construction Analysis

When construing claims, "the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). The claims are the cornerstone of the *Markman* process because they "give notice both to the examiner at the U.S. Patent and Trademark Office during prosecution, and to the public at large, including potential competitors, after the patent has issued." *Johnson & Johnston Assoc. Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (*en banc*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002) ("A patent holder should know what he owns, and the public should know what he does not.").

Claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315. The specification is always relevant to the claim construction analysis, *id.*, but it is "is improper to read limitations from a preferred embodiment described in the specification—even

if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history may be another tool to supply context for claim construction. *Phillips*, 415 F.3d at 1317.  But "because the prosecution history represents an ongoing negotiation between the [Patent Office] and the applicant, rather than the final product . . ., it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*.

Extrinsic evidence may also be useful in some cases, but it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id*. (internal quotations omitted).  For example, technical dictionaries may help a court understand the underlying technology and the manner in which one skilled in the art might use technical terms. *Id.* at 1318.

### 2. The General Rule:  Claims are Given their Ordinary and Customary Meaning

As a general rule, claim terms are given their "plain and ordinary meaning," or "ordinary and customary meaning."  *Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022); *Phillips*, 415 F.3d at 1312.  The "ordinary and customary meaning" is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.   A term's ordinary and customary meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) (internal quotations omitted).  Where there is "no facial ambiguity or obscurity in the claim term," the Federal Circuit imposes "demanding standards" for displacing the ordinary meaning because "the terms at issue have so clear an ordinary meaning that a skilled

artisan would not be looking for clarification in the specification." *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 738 (Fed. Cir. 2014); *see also Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) (where the claim language "leav[es] no genuine uncertainties on interpretive questions . . . it is particularly difficult to conclude that the specification reasonably supports a different meaning"); *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1266-67 (Fed. Cir. 2015).

If a claim term uses common words, the Court may determine that the ordinary and customary meaning requires no further construction. *See Summit 6, LLC v. Samsung Elecs.* Co., Ltd., 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("Because the plain and ordinary meaning of the disputed claim language is clear, the court did not err by declining to construe the claim term"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (same); *Finjan*, 626 F.3d at 1206–07 (same).  Courts "need not—and should not—construe language that is clear on its face," and courts should "refrain from reading meaning into easily-understandable terms."  *Famosa*, 2012 WL 865687, at *2; *see also Keurig, Inc. v. JBR, Inc.*, No. 11-cv-11941, 2013 WL 1213061, at *8 (D. Mass. Mar. 22, 2013) ("[T]he Court is not required to provide additional language construing a claim if its ordinary meaning can be readily understood by the jury and adopting it would resolve the parties' dispute concerning interpretation.").

When construing a phrase comprised of several individual words with common meanings in the art, a court should look to "the established meanings of the individual words." *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1372 (Fed. Cir. 2003).  For example, the term "boot selection flag" has the ordinary meaning of its individual terms: the ordinary meanings of "boot" and "selection" are applied as "descriptive modifiers of 'flag,' a term that does have a common meaning in the art." *Id.; see also K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999)

(determining the meaning of "permanently affixed" by first determining the meaning of "permanently" and then applying this meaning as it modified that of "affixed").

A court may depart from the ordinary and customary meaning in only three exceptional circumstances. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). Each exception is construed narrowly because it is "unjust to the public, as well as an evasion of the law, to construe [a claim term] in a manner different from the plain import of its terms." *White v. Dunbar*, 119 U.S. 47, 51–52 (1886); *see also Helmsderfer*, 527 F.3d. at 1383–84 ("Courts do not rewrite claims; instead [they] give effect to the terms chosen by the patentee.").

The first exception to "ordinary and customary meaning" is when the patentee acts as a "lexicographer" by redefining a claim term to have a special meaning. The "standard for lexicography is exacting." *Baxalta Inc. v. Genentech, Inc*., 972 F.3d 1341, 1349 (Fed. Cir. 2020). For the patentee to redefine a term, they must "clearly express that intent in the written description" with "sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term." *Merck & Co., Inc. v. Teva Pharms. USA*, Inc., 395 F.3d 1364, 1370 (Fed. Cir. 2005). For example, a patentee may use quotation marks and definitional language to indicate that they are redefining a term. *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (noting that quotation marks are "often a strong indication that what follows is a definition"). Here, for example, the patentee acted as his own lexicographer to define the terms "athletic performance" and "workout routine" in the '225 patent:

> [T]he terms "athletic performance" and "workout routine" are used in this specification to generically refer to any type of athletic event, exercise, training, routine, or the like, including events performed as training exercises, events performed as part of actual competitions, etc.

'225 patent at 4:18–22.

The second exception to "ordinary and customary meaning" is when the patentee makes a "specification disclaimer" or "specification disavowal." *Openwave Sys., Inc. v. Apple Inc*., 808 F.3d 509, 512–13 (Fed. Cir. 2015).  A disclaimer occurs when "the specification make[s] clear that the invention does not include a particular feature." *Id.*.  The standard for a specification disclaimer is "exacting": the specification must be "both so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Id.*  Ambiguous language cannot support a specification disclaimer.  *Cisco Sys., Inc. v. Int'l Trade Comm'n*, 873 F.3d 1354, 1361 (Fed. Cir. 2017).   There is no disclaimer simply because the specification discusses features of the "present invention."  *Unwired Planet, LLC v. Apple, Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (holding that the use of the term "present invention" in the summary of the invention does not create a limitation for all subsequent claims).  Nor is there a disclaimer when the specification discusses a "preferred" embodiment.  *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1038 (Fed. Cir. 2020).  Nor when the patentee provides "mere criticism of a particular embodiment."  *Id.*

The third exception is referred to as a "prosecution history disclaimer."  Like a specification disclaimer, the standard for a prosecution history disclaimer is "exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Cisco*, 873 F.3d at 1361.  The doctrine of prosecution history disclaimer prevents a patentee "from recapturing through claim interpretation specific meanings disclaimed during prosecution."  *Mass. Inst. of Tech. v. Shire Pharms., Inc*., 839 F.3d 1111, 1119 (Fed. Cir. 2016).   Here too, an "ambiguous disclaimer" will not "limit a claim term's ordinary meaning."  *SanDisk Corp. v. Memorex Prods., Inc*., 415 F.3d 1278, 1287 (Fed. Cir. 2005).

Absent one of these three exceptions—*i.e.*, inventor lexicography or a "clear and unmistakable" disclaimer in the specification or prosecution history—the ordinary and customary meaning of a claim term controls. *Mass. Inst. of Tech.*, 839 F.3d at 1119; *Unwired Planet*, 829 F.3d at 1358.

### B.    The Person of Ordinary Skill in the Art

The disputed phrases use common, non-technical words that are readily understood by judge, jury, and skilled artisans alike. Thus, the Court need not expressly define the person and level of ordinary skill in the art for purposes of claim construction. *In re Fought*, 941 F.3d 1175, 1179 (Fed. Cir. 2019) (instructing that the PTO need not determine the level of ordinary skill in the art unless a party "places the level of ordinary skill in the art in dispute and explains with particularity how the dispute would alter the outcome"); *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, 2019 WL 121970, at *4–*5 (E.D. Tex. 2019).

Nonetheless, if the Court determines it needs to define the person of ordinary skill in the art for purposes of claim construction in this case, the relevant field of art is athletic performance sensing and/or tracking systems. The level of ordinary skill in the art for the Asserted Patents at the time of invention was low. A person of ordinary skill in the art for the Asserted Patents would have at least a few years of experience in the fitness industry or fitness-tracking industry; or a bachelor's degree in engineering, fitness-related sciences, kinesiology, biomedical sciences, health sciences, or equivalent academic experience; or a bachelor's degree in computer science or equivalent academic experience, combined with experience in the field.

### C.     Construction of the Disputed Claim Terms

#### 1.     "a piece of workout equipment"

The parties dispute the meaning of "a piece of workout equipment," which appears in all Asserted Claims (claims 1–5, 7, 9, 10, 12–14, 16, and 18) of the '225 patent.  Claim 1 is reproduced below:

> 1. A method comprising:
> establishing, by a sensor device, data communication with *a piece of workout equipment*;
> transmitting, by the sensor device and to the piece of workout equipment, a first set of data for operating a first function of the piece of workout equipment; and
> transmitting, by the sensor device and to the piece of workout equipment, a first set of activity data corresponding to an activity performed by a user during a first time period, wherein the piece of workout equipment is configured to display the first set of activity data.

'225 patent at 45:8–20 (emphasis added).

| Disputed Claim Term | Nike's Proposed Construction | lululemon's Proposed Construction |
|---|---|---|
| "a piece of workout equipment" | Ordinary and customary meaning; no further construction required. | "a training machine on which the user performs workout activities" |

There is no dispute that "a piece of workout equipment" should receive its ordinary and customary meaning.  lululemon does not assert that any of the three exceptions to the general rule—lexicography, specification disclaimer, prosecution history disclaimer—apply to "a piece of workout equipment."  The phrase "workout equipment" appears only twice in the specification, and neither instance remotely resembles an instance of inventor lexicography or a specification disclaimer.  *See* '225 patent at 18:18–33; 20:27–47.  And lululemon does not cite a single portion of the prosecution history as supporting its proposed construction—thus conceding the absence of a prosecution history disclaimer.  *See* ECF No. 68, Joint Claim Construction Statement at 3.

The only task for the Court is thus to determine whether the ordinary and customary meaning of "a piece of workout equipment"—as understood by a skilled artisan—requires further construction.  It does not.  The term's ordinary and customary meaning is "readily apparent even to lay judges."  *Acumed*, 483 F.3d at 805.  The phrase "a piece of workout equipment" is "comprised of commonly used terms; each is used in common parlance and has no special meaning in the art."  *Summit 6*, 802 F.3d at 1291.  As a result, "[b]ecause the plain and ordinary meaning of the disputed claim language is clear," the Court does not need to further construe the phrase. *Id.*; *see also Famosa*, 2012 WL 865687, at *2 (courts  "need not—and should not—construe language that is clear on its face," and courts should "refrain from reading meaning into easily-understandable terms").

District courts in the Second Circuit have repeatedly "declined to further construe [a] term because it was a 'straightforward term' that required no construction."  *See Edge Sys. LLC v. Cartessa Aesthetics, LLC*, 571 F. Supp. 3d 13, 19 (E.D.N.Y. 2021) (internal quotations omitted) (declining to further construe "abrade" and "sharp" because "[c]laim construction is not an obligatory exercise in redundance" and "common meanings prove satisfactory"); *Seoul Semiconductor Co. v. Satco Prods., Inc.*, 570 F. Supp. 3d 59, 64 (E.D.N.Y. 2021) ("Clearly, the ordinary meanings of the words suffice for these purposes and these disputed terms – 'second insulation layer,' 'near the active region,' 'bend' and 'fine protrusion' – require no further construction."); *Soter Techs., LLC v. IP Video Corp.*, No. 20-cv-2989, 2021 WL 4553188, at *4 (E.D.N.Y. Oct. 5, 2021) ("Having seen nothing to suggest that further interpretation is required (or, indeed, the significance of the urged construction), the Court declines to further construe the term 'sound detector.'"); *see also Geomatrix Sys., LLC v. Eljen Corp.*, No. 3:20-cv-1900, 2022 WL 7130298, at *10 (D. Conn. Oct. 12, 2022) (finding that eleven terms "need[] no further

construction," including, *e.g.*, the phrase "the separations having a spacing of one foot or more along their length without an intervening intersecting infiltrative surface that connects the adjacent channels within the spacing").   The same is true here:   "a piece of workout equipment" is a "straightforward term" that "require[s] no further construction."   *See Edge Sys.*, 571 F. Supp. 3d at 19.

The specification confirms that "a piece of workout equipment" is used in the '225 patent in the same way that laypersons use those words in common parlance—*i.e.*, as a piece of workout equipment.   *See Summit 6*, 802 F.3d at 1291.   The phrase "workout equipment" appears only twice in the specification.   '225 patent at 18:18–33; 20:27–47.   In the first instance, the '225 patent specification discloses "workout equipment" when discussing data collected during "workout or training exercises"—the data including, for example, distance, speed, calories burned, amount of weight lifted, or the number of rotations.   '225 patent at 18:18–33.   In the second instance, the specification discloses "workout equipment" when discussing "athletic performance sensing and/or tracking."   '225 patent at 20:27–47.   Neither passage suggests that "workout equipment" has a "special meaning in the art."   *Summit 6*, 802 F.3d at 1291.

The specification also uses the words "workout" and "equipment" separately in hundreds of instances—each time reflecting the common parlance usage of each word.   For example, the specification discloses that a "workout routine" "generically refer[s] to any type of athletic event, exercise, training, routine, or the like, including events performed as training exercises, events performed as part of actual competitions, etc."   '225 patent at 4:18–22.   The specification describes "workout activities" as including:

> various activities using training machines (e.g., in a gym), such as treadmills, spinning machines, elliptical training machines . . . and various athletic activities that may or may not directly involve the use of training machines or other equipment, such as running,

> walking, yoga, dance, pilates, stretching, weight lifting (with free weights), martial arts training, tae bo, boxing, wrestling, crew, rowing, kayaking, team based sports (such as basketball, softball, basketball, football, soccer, etc.), athletic track and field events, etc.

'225 patent at 9:50–65.  The specification also discloses athletic "equipment" as including, for example, "a bicycle, bat, racket, club, vehicle, ball, etc."  *Id.* at 10:8–16.  And the specification repeatedly refers to "equipment" generally as a category of things separate from the user's body, clothing, and shoes.  *E.g.*, *id.* at 39:55–61 (disclosing an "electronic module . . . attached to the user's body, clothing, shoes, equipment, etc.").

The unrebutted expert testimony of Dr. Scott McLean is further evidence that a skilled artisan would understand "a piece of workout equipment" in the same way that laypersons use that phrase in common parlance.  Dr. Scott McLean is a biomechanics expert with decades of experience, including as a former professor of Human Performance and Innovation at the University of Michigan and as a former Director of Human Innovation Research at Fitbit, Inc.  Dr. McLean testified that a skilled artisan viewing the claims of the '225 patent as of September 7, 2006, would have understood "a piece of workout equipment" to "mean[] exactly what it says:  a piece of equipment used for, or during, a workout."  McLean Decl.[3] at ¶ 26.  The Court need not further construe this phrase.  *Famosa*, 2012 WL 865687, at *2.

lululemon's construction is incorrect because it seeks to improperly narrow the scope of this phrase.  lululemon asks the Court to narrow "workout equipment" to a "training machine" that the user is "on" when performing workout activities.  The Federal Circuit has repeatedly rejected such attempts to narrow a claim term's ordinary and customary meaning.  *See Thorner v. Sony Computer Ent. Am. L.L.C.*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) (emphasizing that "[t]he patentee

---

[3] The McLean Declaration is attached as Bowling Decl., Ex. B.

is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning, unless the patentee explicitly redefines the term or disavows its full scope"); *see also Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1281 (Fed. Cir. 2017) ("It is axiomatic that we will not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history.")

First, neither the ordinary meaning nor the intrinsic record support lululemon's attempt to narrow "workout equipment" to "training machine[s]." In fact, the specification contradicts this narrow construction. The specification describes "training machines" as just one type of "equipment" used for "athletic performance and/or workout activities":

> users [] of systems and methods according to examples of this invention may be involved in a wide variety of different athletic performance and/or workout activities, including, for example: various activities using training machines (e.g., in a gym) . . . and various athletic activities that may or may not directly ***involve the use of training machines or other equipment*** . . .

'225 patent at 9:50–60 (emphasis added). As Dr. McLean explains, this passage "informs a skilled artisan that 'workout equipment' includes things ***other than*** 'training machines.'" McLean Decl. at ¶ 27 (emphasis added); *see also* Bowling Declaration, Ex. C (12/6/22 McLean Dep. Tr. (excerpted)) at 89:19-23 ("Disclosure of training machines or other equipment informs someone as myself that equipment includes other things than training machines. The language itself describes that."). The inventor's use of the phrase "training machines" in the specification also demonstrates that, if the inventors wanted to limit the claims to "training machines," they could have easily done so. They chose not to, and instead drafted the claims to recite "workout equipment." *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1301 (Fed. Cir. 2013) ("had the applicant wanted to limit the claim to those nucleic acids 'known in advance' . . . it easily could have done so . . . [t]he applicant, however, did not limit the term in the claim.").

Second, neither the ordinary meaning nor the intrinsic record support lululemon's attempt to narrow "workout equipment" to equipment "on which" the user performs workout activities. In fact, the specification contradicts this narrower construction.  The specification provides several examples of "equipment" that do not require the user to perform activities while physically "on" that equipment.  For example, the specification discloses that "athletic equipment" includes a "bat," "racket," "club," or "ball."  '225 patent at 10:8–16.  As another example, highlighted by Dr. McLean, the specification describes "workout activities" as including "boxing" and "track and field events."  McLean Decl. at ¶ 28.  Dr. McLean explains that a skilled artisan would have understood those types of workouts to involve the use of equipment such as punching bags, jump ropes, discus, and hurdles—none of which the user is "on" when performing activities.  *Id*.

lululemon's proposed construction for "a piece of workout equipment" is driven by its litigation objectives—not by the intrinsic record, the ordinary and customary meaning, or Federal Circuit authority.  Indeed, lululemon's own usage of the terms "workout" and "equipment" contradicts the construction it proposes in this case.  For example, the "Equipment" portion of lululemon's website allows visitors to filter for "Workout" equipment.  *See* lululemon Accessories - Workout Equipment, *available at https://shop.lululemon.com/c/equipment/workout/_/N-1z0xcmkZ8tlZ1z0xhwe?Ns=price%7C0* (last visited Dec. 16, 2022).  As shown in the image below, the resulting product page displays numerous types of "workout equipment" that are not training machines—including jump ropes, resistance bands, and a release and recovery ball set. *Id.* (red circle annotations added).  And most of the displayed "workout equipment" does not require the user to be physically "on" the equipment during use.  *Id*.



Likewise, when lululemon promotes the accused MIRROR product—a product that users are not physically "on" during use—lululemon refers to the product as "equipment" for performing "workouts."  McLean Decl. at ¶ 29.

lululemon's proposed construction for "a piece of workout equipment" is also inconsistent with positions it took one week ago in a petition for *inter partes* review of the '225 patent.  *See* Bowling Declaration, Ex. D (*lululemon Athletica Canada Inc. et. al. v. Nike, Inc.*, IPR2023-00424, Paper No. 1 (PTAB Jan. 3, 2023) ("the '225 Patent IPR petition") (excerpted)).  In challenging claims 1–10 and 12–19 of the '225 patent—all of which recite the "piece of workout equipment" claim phrase—lululemon argued to the PTAB that "no [claim] constructions are necessary."  *Id.* at 6.  lululemon makes the opposite argument here, alleging that "Federal Circuit precedent and representations made by Nike in the specifications and file histories" require the Court to construe this claim phrase narrowly.  ECF No. 68, Joint Claim Construction Statement (Oct. 20, 2022) at 1.

lululemon's specific invalidity arguments in the '225 IPR petition are also inconsistent with its proposed constructions here.  In this proceeding, lululemon's proposed construction narrows "a piece of workout equipment" to a "training machine" "on which" the user performs workout activities.  But in the '225 IPR petition, lululemon asserts that "workout equipment" includes "free weights."  '225 IPR petition at 10.   When discussing the Acres reference, lululemon states:

> Acres's exercise equipment is workout equipment. Acres's exercise
> equipment includes "treadmills, elliptical trainers, stair machines,
> ***free weights***, weight machines, stationary bicycles, rowing
> machines and other such devices found in the home and in athletic
> facilities."

*Id.* (emphasis added).

The Federal Circuit has repeatedly admonished parties who "twist claims, like a nose of wax" in one way to argue invalidity and another to avoid infringement.  *See Data Engine Techs.* 10 F.4th at 1381 (internal quotations omitted).  Patent claims provide public notice as to the scope of the invention at issue, and therefore "must be interpreted and given the same meaning for purposes of both validity and infringement analyses."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  The scope of a claimed invention should not vary week-by-week and proceeding-by-proceeding.  Instead, claims should be construed objectively from the vantage point of a skilled artisan.  *See Phillips*, 415 F.3d at 1313.

For these reasons, Nike requests that the Court reject lululemon's improper construction, "give effect to the terms chosen by the patentee," *Helmsderfer*, 527 F.3d at 1383–84 (Fed. Cir. 2008), and give "a piece of workout equipment" its ordinary and customary meaning:  a piece of workout equipment.

### 2.      the "one or more"  "attribute" claim phrases

The parties dispute the meaning of two claim phrases in the '930 patent, both of which include the words "one or more" followed by a list of "attributes."  '930 patent at 26:35–42.  The

first phrase lists three "fitness" attributes that are used to calculate a "fitness sub-score." *Id.* The second phrase lists five "athleticism" attributes that are used to calculate an "athleticism sub-score." Both phrases appear in claim 1 of the '930 patent, which is reproduced below:

> 1. A computer-implemented method comprising:
> providing first instructions to a user to perform a first athletic movement;
> receiving, from a sensor, first activity data representing the first athletic movement;
> calculating with a processor, based on the first activity data, a first combinatory fitness-athleticism score;
> providing, in response to a triggering event, second instructions to the user to perform a second athletic movement;
> receiving, from the sensor, second activity data representing the second athletic movement;
> calculating, with the processor, based on the second activity data, a second combinatory fitness-athleticism score,
> wherein the first and the second combinatory fitness-athleticism scores each comprise a fitness sub-score and a separate athleticism sub-score of the user,
> wherein the fitness sub-score is calculated, by the processor, using ***one or more of an endurance fitness attribute, a flexibility fitness attribute and a strength fitness attribute of the user***, and
> wherein the athleticism sub-score is calculated, by the processor, using ***one or more of a speed athleticism attribute, an agility athleticism attribute, a reaction athleticism attribute, a power athleticism attribute and a balance athleticism attribute*** of the user.

'930 patent at 26:16–42 (emphasis added).

The parties' proposed claim constructions are shown below with lululemon's proposed added language underlined:

| Disputed Claim Term | Nike's Proposed Construction | lululemon's Proposed Construction |
|---|---|---|
| "one or more of an endurance fitness attribute, a flexibility fitness attribute and a strength fitness attribute of the user" | ordinary and customary meaning; no further construction required. | "one or more endurance fitness attribute, <u>one or more</u> flexibility fitness attribute, and <u>one or more</u> strength fitness attribute of the user" |
| "one or more of a speed athleticism attribute, an agility athleticism attribute, a reaction athleticism attribute, a power athleticism attribute | ordinary and customary meaning; no further construction required | "one or more speed athleticism attribute, <u>one or more</u> agility athleticism attribute, <u>one or more</u> reaction athleticism attribute, <u>one or more</u> power athleticism |

| and a balance athleticism attribute" | | attribute, and <u>one or more</u> balance athleticism attribute of the user" |
|---|---|---|

The parties do not dispute that these phrases carry their ordinary and customary meaning. Nor do they dispute that the phrase uses non-technical, commonly understood words. The only dispute is whether—as lululemon proposes—the Court should depart from the patentee's chosen language and insert "one or more" before each item in the lists of attributes.

In support of its constructions, lululemon relies on *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 885–886 (Fed. Cir. 2004), a case involving a different claim phrase in an entirely unrelated patent. Bowling Declaration, Ex. C (12/6/22 McLean Dep. Tr.) at 192:4-17. The patent in *SuperGuide* claimed a device for recording television programming. *Superguide*, 358 F.3d at 884-86. The parties disputed the meaning of the phrase "at least one of a desired program start time, a desired program end time, a desired program service, and a desired program type." *Id*. The parties disputed whether the claim required "at least one" category in the list (e.g., the claim required only a program start time), or whether the claim required "at least one" value for *all* categories on the list (*i.e.*, the claim required at least one program start time, at least one program end time, at least one program service, and at least one program type). *Id.* Relying on the specification, the nature of the categories, and a "common treatise on grammar"—William Strunk, Jr. & E.B. White, The Elements of Style 27 (4th ed. 2000)—the court held that the words "at least one of" modified each category in the claim term, and the claim thus required "at least one" value for each category.

But as numerous courts have since held, "*SuperGuide* did not erect a universal rule of construction for all uses of 'at least one of' in all patents." *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 1265009, at *8 (N.D. Cal. Mar. 19, 2015). Rather, "the *SuperGuide* court's construction of 'at least [one] of' was based on the ***particular facts of the particular patent*** at

20

issue there." *Id.* (emphasis added).  The court in *VendoNet, Inc. v. Redbox Automated Retail, LLC,* similarly explained that *SuperGuide* "did not announce that its rule of grammar was a mandatory rule of claim construction, to be used even when unnecessary to serve the purpose of the invention." 13–cv–03475, 2014 WL 4555287, at *4 (N.D. Ill. Sept. 15, 2014).  And in *Firtiva Corp. v. Funimation Global Group, LLC*, the Eastern District of Texas rejected a proposed construction based on *SuperGuide* because (i) unlike the patent in *SuperGuide*, the specification provided "examples in which not all of the recited 'categories' are required" and (ii) the listed categories in *SuperGuide* were "of a different nature than the data here." 2022 WL 23165, at *8 (E.D. Tex. Jan. 3, 2022).

This Court has likewise rejected *SuperGuide* as a general rule of claim construction.  In *SIMO Holdings Inc. v. Hong Kong uCloudlink*, for example, this Court rejected the defendants' *SuperGuide*-based construction because, "although grammatically appealing, [it] would contradict the specification." 376 F.Supp.3d 369, 381 (S.D.N.Y. 2019).  This Court explained that "construing the list as disjunctive rather than conjunctive preserves the embodiments described by the specification, and is therefore preferred." *Id.* at 381–82.  In other words, "not all of the components listed are required to practice [the] claim." *Id.* at 382.

Here too, lululemon's *SuperGuide*-based constructions are improper because they contradict the specification.  The very first paragraph of the specification, the Abstract, underscores this conclusion.  The Abstract summarizes the claimed invention as allowing users to "test a plurality of fitness attributes" while "performing an athletic movement and/or exercise" and then "generating a combinatory fitness athleticism score." '930 patent at Abstract.  To do so, "***[a]t least one of*** the plurality of fitness attributes may be selected from the group consisting of: endurance, flexibility, strength and ***combinations thereof***." *Id.* (emphasis added).  The

"combinations thereof" language confirms that the "combinatory fitness athleticism score" does not require all three attributes—endurance, flexibility, and strength—to be measured.  *Id.*  Rather, "combinations" of those attributed "may be selected from the group."  *Id.*

Other portions of the specification are also inconsistent with lululemon's *SuperGuide-*based constructions.  For example, when discussing fitness attributes, the specification discloses that "example fitness attributes may include, but are not limited to: endurance, flexibility, strength and ***combinations thereof***."  '930 patent at 23:36–38 (emphasis added).  Likewise, when discussing athleticism attributes, the specification discloses that "example athleticism attributes may include, but are not limited to: speed, agility, reaction, power, balance, ***and combinations thereof***."  '930 patent at 23:39–41.  Dr. McLean provided unrebutted expert testimony that a skilled artisan would understand this "combinations thereof" language to mean that various combinations of these attributes—and not necessarily all attributes—may be used to calculate the fitness sub-score and the athleticism sub-score.  McLean Decl. at ¶¶ 34, 39.

The specification also discloses embodiments in which "a single exercise may be utilized to ***measure at least one athleticism attribute*** and ***at least one fitness attribute***."  '930 patent at 23:31–33 (emphasis added).  Dr. McLean provided unrebutted expert testimony that a skilled artisan would understand this disclosure to mean that some embodiments measure only one athleticism attribute and one fitness attribute, while other embodiments measure only two athleticism attributes and two fitness attributes.  McLean Decl. at ¶¶ 34, 39.  As another example, the specification discloses that "[t]he drills or tests configured to ***measure one or more attributes*** may be administered on a routine basis, during a specific time frame, and/or upon occurrence of a triggering event."  '930 patent at 24:32–35 (emphasis added).  As Dr. McLean opined, this disclosure confirms that some embodiments may measure only one or two attributes. McLean

Decl. at ¶¶ 34, 39.   lululemon's proposed constructions are inconsistent with these embodiments because lululemon's constructions require the sub-scores to be calculated by measuring *all* three listed fitness attributes and *all* five athleticism attributes in *all* instances.

lululemon's proposed constructions for the "one or more" "attribute" claim phrases are driven by lululemon's litigation objectives—not by the intrinsic record, the ordinary and customary meaning, or Federal Circuit authority.   In a petition for *inter partes* review that lululemon filed just one week ago, it raised invalidity arguments that directly contradict its proposed constructions here.   *See* Bowling Declaration, Ex. E (*lululemon Athletica Canada Inc. et. al. v. Nike, Inc.* IPR2023-00348, Paper No. 1 (PTAB Jan. 4, 2023) ("the '930 Patent IPR petition") (excerpted)).   In challenging claims 1, 5–7, and 12 of the '930 patent—all of which recite the "one or more" "attribute" claim phrases—lululemon argued to the PTAB that "no [claim] constructions are necessary." *Id.* at 14.   That's the opposite of what lululemon argues here, where it alleges that "Federal Circuit precedent and representations made by Nike in the specifications and file histories" require the Court to construe these claim phrases more narrowly.   ECF No. 68, Joint Claim Construction Statement (Oct. 20, 2022) at 1.

lululemon's specific invalidity arguments in the '930 IPR petition are also inconsistent with its proposed constructions here.   In this proceeding, lululemon's proposed construction requires calculating an athleticism sub-score by measuring *all* five athleticism attributes in *all* instances. But in the '930 IPR petition, lululemon asserts that the claim 1 is anticipated by a prior art reference that measures just two athleticism attributes.   '930 IPR petition at 25.   In Ground 1 of the '930 IPR petition, lululemon argues that the "Lofi" reference[4] anticipates claim 1 of the '930 patent

---

[4] *See* Bowling Declaration, Ex. F (PCT Patent Publication No. WO 2006/111687 ("Lofi") (930 Patent IPR Petition, Exhibit 1002))

because Lofi teaches calculating an athleticism sub-score based on individual fitness tests that measure only "balance and reaction." '930 IPR petition at 25. lululemon makes similar arguments in Grounds 2 and 3 of the '930 IPR petition, where it contends that claim 1 is obvious in view of two references that teach calculating an athleticism sub-score based on a combined three attributes. *Id.* at 43 (combination measuring only balance, reaction, and agility), 60–61 (combination measuring only speed, balance, and agility).

Here too, lululemon is improperly attempting to twist the asserted claims "like a nose of wax" in one way to argue invalidity and another to avoid infringement. *Data Engine*, 10 F.4th at 1381 (Fed. Cir. 2021) (internal quotations omitted). The scope of the invention claimed in the '930 patent should not vary week-by-week and proceeding-by-proceeding. This "shifting sands" approach to claim construction undermines the public notice function of patents and contradicts the axiom that claims should be construed objectively from the vantage point of a skilled artisan. *See Phillips*, 415 F.3d at 1313.

For these reasons, Nike requests that this Court reject lululemon's improper construction, "give effect to the terms chosen by the patentee," *Helmsderfer*, 527 F.3d at 1383–84 (Fed. Cir. 2008), and give the disputed "one or more" phrases their ordinary and customary meaning: "one or more of an endurance fitness attribute, a flexibility fitness attribute and a strength fitness attribute of the user"; and "one or more of a speed athleticism attribute, an agility athleticism attribute, a reaction athleticism attribute, a power athleticism attribute and a balance athleticism attribute."

## IV.   **CONCLUSION**

For the foregoing reasons, Nike respectfully asks the Court to resolve the parties' claim construction disputes by rejecting lululemon's improper constructions, giving each disputed

phrase its ordinary and customary meaning, and declining to rewrite or further construe the disputed phrases.

Dated: January 12, 2023                    ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Aaron P. Bowling*
    Aaron P. Bowling (admitted *pro hac vice*)
    Christopher J. Renk (admitted *pro hac vice*)
    Michael J. Harris (admitted *pro hac vice*)
    Arnold & Porter Kaye Scholer LLP
    70 W. Madison Street, Suite 4200
    Chicago, IL 60602
    Telephone: (312) 583-2300
    Email: chris.renk@arnoldporter.com
        michael.harris@arnoldporter.com
        aaron.bowling@arnoldporter.com

    Michael J. Sebba (SBN 5398540)
    Arnold & Porter Kaye Scholer LLP
    777 South Figueroa Street, 44th Floor
    Los Angeles, CA 90017-5844
    Telephone: (213) 243-4000
    Email: michael.sebba@arnoldporter.com

    Bridgette C. Gershoni (admitted *pro hac vice*)
    Michael J. Gershoni (admitted *pro hac vice*)
    Lindsey C. Staubach (admitted *pro hac vice*)
    Kathleen P. Duffy (SBN 5910153)
    Arnold & Porter Kaye Scholer LLP
    601 Massachusetts Ave., NW
    Washington, D.C. 20001
    Telephone: (202) 942-5000
    Email: bridgette.gershoni@arnoldporter.com
        michael.gershoni@arnoldporter.com
        lindsey.staubach@arnoldporter.com
        kathleen.duffy@arnoldporter.com

    Bonnie Phan (admitted *pro hac vice*)
    Arnold & Porter Kaye Scholer LLP
    3 Embarcadero Center, 10th Floor
    San Francisco, CA 94111
    Telephone: (415) 471-3138
    Email: bonnie.phan@arnoldporter.com

    *Attorneys for Plaintiff Nike, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on January 12, 2023, I caused a true and correct copy of **NIKE, INC.'S**

**OPENING CLAIM CONSTRUCTION BRIEF** to be served via ECF on the following counsel

for Defendants:

> Kyle W. Mooney
> Diek O. Van Nort
> Jennifer J. Schmidt
> MORRISON & FOERSTER LLP
> *kmooney@mofo.com*
> *dvannort@mofo.com*
> *jschmidt@mofo.com*

> /s/ *Aaron P. Bowling*
> For Plaintiff Nike, Inc.